AUGUST J. FALSKEN, APPELLANT, v. JOHN F. HARKEN-
DORF AND OTHERS, APPELLEES.

1. **Trust Estate in Land.** Where it is sought through the estab-
   lishment of a trust by parol evidence to defeat the title of one
   holding the fee of real estate, under a deed absolute, the essen-
   tial facts relied on must be clearly proved or the attempt will
   fail.

2. ————. Evidence in support of alleged trust examined, and held
   to be inadequate.

APPEAL from the district court of Richardson county.
Tried below before WEAVER, J.  Beyond the facts
stated in the opinion it may be added that the defend-
ant Harkendorf was the executor of John G. Falsken,
and the other defendants are devisees under his will
bequeathing the land in controversy.

*Schoenheit & Thomas*, for appellant.

*Clarence Gillespie*, for appellee.

LAKE, J.

The right of the plaintiff to the relief sought rests
upon an alleged express trust.  He states in his peti-
tion that his wife Bertha shortly before her death in
1875, being desirous of conveying the land in contro-
versy back to him, from whom she had received it,
"was informed and believed that she could not do so
directly, or in any other manner than by conveying to
some third person as trustee, and having such third
person convey to her husband.  Thereupon for the pur-
pose of so conveying the said premises to plaintiff, and
for no other purpose, on the first day of May, 1875,
the said Bertha made a deed of conveyance of the said

premises to the said John G. Falsken, who had consented to act as such trustee. The said John G. Falsken paid no consideration for the said deed, and the same was so made to him, at his suggestion, solely for the purpose of having him convey said premises to the plaintiff herein. The said deed was filed for record in the office of the recorder of said county of Richardson on the 1st day of May, 1875, and was recorded in Book 20, page 537. At the time of making said deed, the said John G. Falsken took upon himself said trust, and promised and agreed to and with the said Bertha, and plaintiff herein, that he would execute the same, and would convey the said premises to the plaintiff whenever called upon to do so."

It is further alleged, and of this there is no dispute, that John G. Falsken held the title so received until his death, which occurred in September, 1877, a period of over two years; and that he left a will, bequeathing this, with other property, to his four grandchildren, two of whom are sons of the plaintiff. However, for the purpose, evidently, of avoiding the moral effect of this seemingly fair disposition of his property by the granddaughter, and his treating it as if it were in truth, what it appeared to be, his own, the plaintiff alleges that when he "made said will he did not intend to include therein the land aforesaid, nor to devise the same."

On an examination of the evidence we find nothing whatever, aside from the deed itself, to indicate the purpose of the grantor, Bertha, in making it. And the deed being absolute, the only inference to be drawn from her making it is, that she intended merely to invest John G. Falsken with the fee, and to his own use. As to the allegation that she was advised to convey "*to some third person as trustee*," in order to place the title in her husband, there is not a particle of evidence.

Indeed there is none to the effect that she was advised, or consulted anyone, on that subject.

Concerning the execution of the deed but very little is disclosed.   As to who drafted it, nothing.   The witness Marvin swears that he, as justice of the peace, took the acknowledgment, but saw no consideration pass between the parties.   Nothing was said on that occasion, which he understood, as to the object for which the deed was made.   There was, therefore, so far as we are advised, no trust declared, or even contemplated by the grantor at the time of the conveyance.   And the same is true of the grantee.   As before shown it is averred in the petition that the deed was "*made to him at his suggestion*" solely for the purpose of having him convey to the plaintiff.   But there is not a syllable of evidence to warrant this assumption.   This, as well as the allegation of the grantor having been advised that it was necessary to convey the title "to some third person as trustee," as a means of finally placing it in her husband, is a very important fact in the case as made by the petition, and, if true, ought by all means to have been proved.

There is, however, some testimony, but not at all satisfactory, tending to show that John G. Falsken took the conveyance for the purpose alleged, and also that he paid no consideration therefor.   This testimony consists of declarations said to have been made by him in the presence of the witnesses Uhl, and Charles Falsken and his wife, subsequently to the time he received the deed.   Uhl testified that he overheard "a conversation between John G. Falsken and August Falsken, the plaintiff, in reference to what he *supposed* to be this very property in controversy."   This was in 1877, and, according to Uhl, " August merely said, ' Father has got my property in his name,' or words to that effect; it was in German; and the old gentleman said,

'Yes, the property is in my name, and I will make a deed now;' but August said, 'No, it is late; we have got to go home.'"

Charles Falsken testified that his father said "he got the deed from plaintiff just for a trust; that he would sign it back to him at any time he would call on him; that he did not call it his own. Then he said he had not paid anything for it."

Q. Did you have more than one conversation about it with him?

A. Yes, he spoke about it several times.

Q. Did you talk with him shortly before his death, or any time?

A. He mentioned it that August didn't call on him to sign it back to him; he was ready any time.

Q. What did he mean by signing it back to him?

A. The property.

Q. Making a deed to him?

A. Yes, sir.

On this subject, Minnie, the wife of the last named witness, testified as follows:

Q. What did he (John G. Falsken) say?

A. He said he hadn't bought the land, but they wrote it over to him; he had it in his own name.

Q. Did he say what he was going to do with the property?

A. He said he was going to give it back to August Falsken any time he wanted.

Q. Did he say anything in regard to paying for the land?

A. He said he did not pay anything for it.

And on cross-examination she testified that this talk took place in May or June, 1875.

All of this, besides being, what hearsay declarations of one deceased are always considered, very weak testimony, has opposed to it the fact, pretty clearly estab-

lished, that at the time of this transaction the plaintiff was owing his father an amount about equal to the value of the property so conveyed, which was discharged of record on the very day the deed was made. Also, that John G. Falsken held the title for more than two years, and in the meantime treated the land as his own, even to the extent, as before stated, of making it the subject of a solemn bequest to his grandchildren, which we cannot bring ourselves to believe he would have done had he been under an obligation to convey it to his son. The averment in the petition, to the effect that this property was put into the will by mistake, and thus unintentionally made the subject of bequest, has no foundation in fact, there being no evidence to support it. Where it is sought through the establishment of a trust, by parol evidence, to defeat the title of one holding the fee of real estate under a deed absolute, the essential facts relied on must be proved with great clearness and certainty, or the attempt will fail. "Loose and equivocal facts ought not to control the evidence of deeds." 1 Perry on Trusts, sec. 137.

After a careful consideration of the evidence, not only are we unable to say that the court below incorrectly estimated its value, but, on the contrary, we believe that in holding it to be insufficient to establish the alleged trust, the only conclusion that could safely be drawn was reached.

In the very dim light shed upon the transactions of the parties respecting this property, prudence seems to dictate that rather than disturb this absolute title, we should guard it as left by the holder at the time of his decease. Holding these views, the judgment must be affirmed.

JUDGMENT AFFIRMED.