<hr />

BROWNELL & COMPANY ET AL., APPELLANTS, V. ELIJAH STODDARD ET UX., APPELLEES.

FILED OCTOBER 3, 1894.   No. 5394.

1. **Fraudulent Conveyances:** CREDITOR'S BILL: HUSBAND AND WIFE: RESULTING TRUST. In an action by judgment creditors to subject to the payment of their judgments land conveyed by

16

the debtor through a third person to the debtor's wife, the wife testified that when the land was bought by her husband, twenty years prior to the trial, she furnished a portion of the purchase money.    There was no evidence tending to show that there was any agreement or intention that the money should be repaid or that the wife should have either a lien upon or interest in the land.    *Held*, That such evidence was insufficient to establish in her favor either a lien for the money so furnished or a resulting trust in the land.

2. ———: ———: EQUITY: EVIDENCE.    In order to establish any equity in the wife because of such transaction, it must not only appear that she furnished the money as claimed, but there must also be evidence to overcome the presumption of an advancement, and in a contest with her husband's creditors, the presumption of bad faith in the transfer.

3. **Subrogation:** LIENS OF CREDITORS: PAYMENT BY WIFE.    The judgment debtor conveyed the land to a third person for the purpose of enabling such third person to obtain a loan thereon and discharge certain incumbrances.    The wife of the debtor discharged the incumbrances and the transferee conveyed to her. The district court rightly held that in an action by the creditors to subject the land to the payment of their judgments she was entitled to be subrogated to the rights of those whose liens she had paid, and rightly included in the lien so established the amount of certain taxes paid by her before the judgments were recovered.

4. **Homestead:** FAILURE TO ASSERT RIGHT: WAIVER.    The right of homestead is a personal privilege, and will be deemed waived unless asserted before a sale of the premises, where those entitled to claim the right have been parties to the proceeding resulting in the sale, where those proceedings have been adversary in their character, and where there has been an opportunity to assert the right of homestead.

APPEAL from the district court of Douglas county. Heard below before WAKELEY, J.

A statement of facts appears in the opinion.

*Isaac Adams* and *James H. Woolley,* for appellants:

The rights of the creditors in the land in controversy are superior to any claims of the wife for money advanced

to her husband in 1871. (*Besson v. Eveland*, 26 N. J. Eq.,
472; *Post v. Stiger*, 29 N. J. Eq., 556; *Aultman v. Ober-meyer*, 6 Neb., 260; *Steele v. Coon*, 27 Neb., 587; Pome-roy, Equity Jurisprudence, sec. 1040; *Hanson v. Manley*,
72 Ia., 48; *Beecher v. Wilson*, 6 S. E. Rep. [Va.], 209;
*Lee v. Cole*, 15 Atl. Rep. [N. J.], 531; *Strong v. Lawrence*,
58 Ia., 56; Wait, Fraudulent Conveyances, sec. 192;
*Humes v. Scruggs*, 94 U. S., 22; *Moyer v. Adams*, 2 Fed.
Rep., 182; *Luers v. Brunjes*, 34 N. J. Eq., 19; *Wake v.
Griffin*, 9 Neb., 47; *Roy v. McPherson*, 11 Neb., 197;
*Hoagland v. Wilson*, 15 Neb., 321; *Early v. Wilson*, 31
Neb., 459; *Swartz v. McClelland*, 31 Neb., 648.)

The decree should have been entered without reservation
of homestead rights. (*Rector v. Rotton*, 3 Neb., 178.)

*A. S. Churchill,* contra, cited, on the first point made by
appellants: *Maxwell v. Longenecker*, 89 Ill., 102; *Ander-son v. Hubbell*, 93 Ind., 570; *Schribar v. Platt*, 19 Neb.,
629; *Norwegian Plow Co. v. Haines*, 21 Neb., 691. On
the second point made by appellants: *Bowker v. Collins*, 4
Neb., 494; *McMahon v. Speilman*, 15 Neb., 653; *Stout v.
Rapp*, 17 Neb., 462; *McHugh v. Smiley*, 17 Neb., 626;
*Hicks v. Mack*, 19 Neb., 339.

IRVINE, C.

This was an action in the nature of a creditor's bill by
Brownell & Co., who had a judgment against Elijah Stod-dard, seeking to subject to the payment of that judgment
certain land in Douglas county, which it was alleged had
been conveyed by Stoddard through a third person to
Stoddard's wife in fraud of creditors. The Wood River
Bank intervened, setting up a judgment in its favor against
Stoddard and seeking the same relief. Stoddard and his
wife, Mary D. Stoddard, were the defendants. The de-fendants answered jointly, denying the allegations of fraud
and alleging that the conveyances were made for a valuable

consideration and without intent to defraud. It appeared that prior to August, 1887, the title to the land in question was in Elijah Stoddard; that on August 10, 1887, Stoddard and wife joined in a conveyance of the land to Joseph H. Gue; that on November 19, 1887, Gue conveyed to Mrs. Stoddard. The consideration stated in each deed was nominal. It also appeared that at the time of the conveyance to Gue there was a mortgage on the premises, owned by Gue, and that the land was otherwise incumbered. The conveyance to Gue was for the purpose of enabling Gue to obtain satisfaction of his claim, apparently by placing a new loan on the land to cover all the claims; but because of some cloud on the title it was impossible to effect this loan. Mrs. Stoddard was, however, possessed of means with which she then discharged the incumbrances, including that of Gue, and paid out some money for the purpose of removing the cloud from the title. Gue then conveyed the land to her. The court found substantially these facts, and held that by reason thereof Mrs. Stoddard was entitled only to be subrogated to the liens so by her discharged, together with certain taxes since paid by her, and the sum paid to remove the cloud from the title. The court also found that the land had been purchased by Stoddard in October, 1871, at which time Mrs. Stoddard paid $1,000 of the original purchase price. This $1,000, with interest from the time of payment, was added to the amount of Mrs. Stoddard's lien. The whole sum thus found due her amounts to $9,936.51. The land was decreed to be sold to satisfy the judgments of the plaintiff and intervenor, subject to Mrs. Stoddard's lien for this amount. The creditors appeal. No complaint is made of that portion of the decree subrogating Mrs. Stoddard to the rights of those creditors whose liens she paid. Complaint is restricted to the allowance of the $1,000 and interest, and of the taxes, and to a reservation in the decree of the homestead rights, if any, of the Stoddards.

1. The evidence in regard to Mrs. Stoddard's claim for $1,000 is very meager and will be quoted entire. Mrs. Stoddard is the only witness on the subject. She testifies as follows:

Q. State when the land was originally purchased by your husband, Mr. Stoddard, whether you furnished any of the original purchase money.

A. I did.

Q. How much of it did you furnish?

A. $1,000.

Q. And do you remember what the original cost of it was?

A. I think it was about $4,000.

Q. And this $1,000 that you put into the original purchase price, you may state from what that money came.

A. From the sale of a house that I owned in North Brookville, Massachusetts.

Cross-examination by Mr. Adams:

Q. Mrs. Stoddard, when were you married?

A. I was married in 1868.

Q. When did you move to Omaha?

A. I think it was in 1870.

Q. How long before this land was purchased?

A. After we came.

Q. How long did you live here before it was purchased?

A. About two years, I think.

Q. This $1,000, did you have it when you first came out here, or was it sent to you?

A. Sent to me.

Q. How long was it sent to you before the land was purchased?

A. It was sent about the time the land was purchased.

Q. At the time?

A. Yes, sir; first payment.

Q. In what form did it come?

A. I do not think I remember.

Q. When it arrived did you receive it? Did you have it in your possession?

A. I don't remember whether I did or not.

Q. To whom was the money paid? Do you know?

A. To the party the place was purchased from, Mr. Mason.

Q. Paid by your husband to Mr. Mason?

A. Probably.

Q. You don't know?

A. I don't remember.

Q. Your husband never gave you any note to represent this?

A. No, sir.

We are very clearly of the opinion that an error was committed in allowing this sum of $1,000, with interest, as a lien upon the land. It will be observed that in this evidence it does not appear that any evidence of indebtedness was taken; that it was not claimed that even a parol agreement existed whereby Mrs. Stoddard was to have a lien for the amount advanced. If A lend B $1,000, we do not understand that he acquires a specific lien on the land which B purchases with the money so borrowed merely because the money was so used. But the evidence also fails to establish a loan. Mrs. Stoddard says she "furnished" a portion of the purchase money. This word "furnished" is the only word used either by her or her counsel in describing the transaction. It is not pretended that there was any agreement for repayment, much less any lien by contract upon the land. It would seem that if Mrs. Stoddard be entitled to any relief on account of this item, it would be upon the theory that a trust resulted to her to the extent of a quarter interest in the land, it appearing that the whole purchase price was $4,000. In such event the decree would, under the evidence as to value, be without prejudice to appellants. Can a resulting trust be established on such evidence? We think not. The doctrine of

resulting trusts is founded upon the presumed intention of the parties. "A trust is never presumed or implied as intended by the parties unless, taking all the circumstances together, that is the fair and reasonable interpretation of their acts and transactions." (2 Story, Equity Jurisprudence, sec. 1195.) The doctrine of a resulting trust from payment of the consideration money "has its origin in the natural presumption, in the absence of all rebutting circumstances, that he who supplies the money means the purchase to be for his own benefit rather than for that of another." (2 Story, Equity Jurisprudence, sec. 1201.) "As the resulting or implied trust is, in such cases, a mere matter of presumption, it may be rebutted by other circumstances established in evidence, and even by parol proofs which satisfactorily contradict it. * * * Thus, for example, if a parent should purchase in the name of a son, the purchase would be deemed *prima facie* as intended as an advancement, so as to rebut the presumption of a resulting trust for the parent. But this presumption that it is an advancement may be rebutted by evidence manifesting a clear intention that the son shall take as a trustee." (2 Story, Equity Jurisprudence, sec. 1202. See 2 Perry, Trusts, sec. 126.) The foregoing statements seem elementary, but in cases where distinctions were not necessary, the general principle has been so often stated,—that where one pays the consideration and the title is taken in another, a trust results in favor of the one paying the consideration,—that we are apt to regard this as a statement of an absolute legal proposition and not merely as a rule of evidence. In the more careful statements of the rule its operation is restricted to transactions between strangers, and it necessarily fails wherever the relationship of the parties is such that a payment of money would be presumed an advancement rather than a loan. It is always said that in order to establish a resulting trust the evidence should be clear, satisfactory, and conclusive. (*Hoehne v. Breitkreitz*, 5 Neb.,

110.) Mrs. Stoddard's evidence standing without contra-' diction, it may be said that the fact of her furnishing the $1,000 was sufficiently proved, but her relationship as wife not only raised the presumption of an advancement, but also, in a contest with her husband's creditors, cast upon her the burden of proof of good faith. (*Aultman v. Ober-meyer*, 6 Neb., 260; *First Nat. Bank v. Bartlett*, 8 Neb., 319; *Thompson v. Loenig*, 13 Neb., 386; *Stevens v. Carson*, 30 Neb., 544; *Hill v. Fouse*, 32 Neb., 637.) In *Roy v. McPherson*, 11 Neb., 197, Mrs. Roy purchased the land in controversy with her own money, and the title, contrary to her directions, was taken in her husband, a fact which she at once learned. Fourteen years thereafter it was conveyed to her. While her husband held the title he obtained credit and contracted debts on the faith of his being the absolute owner of the land. These debts were put in judgment before Roy parted with the title. It was held that as between Mrs. Roy and the creditors their equity must be preferred. This case has been cited with approval in a number of cases since. (*Goldsmith v. Fuller*, 30 Neb., 563; *Early v. Wilson*, 31 Neb., 458; *Swartz v. McClellan*, 31 Neb., 646.) It is true in these cases much stress was laid on the fact of the husband's obtaining credit on the faith of his owner-ship, while in the case we are considering it does not appear that the debts out of which these judgments grew were created upon the faith of Stoddard's apparent ownership of this land. These cases, therefore, do not control the present case, but they illustrate the salutary rule of examining with caution evidence offered to establish supposed equities as between husband and wife where the husband's creditors would suffer from establishing the equity. In *Stevens v. Carson*, 30 Neb., 544, certain statements in the opinions in *Aultman v. Obermeyer*, 6 Neb., 260, *Lipscomb v. Lyon*, 19 Neb., 511, and *Woodruff v. White*, 25 Neb., 745, were dis-approved in so far as they intimated that in such cases the good faith of the transfer must be established beyond ques-

tion, but it was, nevertheless, reasserted that the wife must establish her good faith by a preponderance of the evidence. Having upon her the burden of proof in this case, she merely established upon this branch of it the furnishing to her husband of a sum of money in 1871. The evidence did not show or tend to show that this was not intended as a gift or advancement or that there was any agreement, understanding, or intention that the money should be repaid or that she should have any interest in the land. We think the evidence was insufficient to establish either a lien upon the land or a resulting trust in a portion of it, and that the decree must be modified to the extent of deducting from the amount established as her lien the sum of $1,000, with interest from the date of the conveyance to Stoddard, October 23, 1871, to the date of the decree, January 4, 1892. This amount we compute to be $2,413.75.

2. As to the allowance made to Mrs. Stoddard for taxes, we think the district court was right. While these taxes were paid before the judgments were recovered, they cannot be deemed a voluntary payment, as Mrs. Stoddard, as an equitable mortgagee, was entitled to redeem, and, indeed, was compellable to do so to protect her equity. Treating her as a mortgagee, she had a right to pay these taxes and have them added to the amount of her mortgage in a foreclosure proceeding. They were in any sense prior to the liens of the judgments and would have been so had the legal title remained in Stoddard.

3. The decree of the district court, after ordering the sale, contains this clause: "Said sale to be without prejudice to the homestead rights, if any, of the said Elijah Stoddard or Mary D. Stoddard, or both, in said premises." It was not pleaded that the premises were a homestead, nor is there any evidence tending to establish such fact. Where proceedings are ex parte there is no doubt that the homestead cannot be divested by an attempted execution sale.

(*McHugh v. Smiley*, 17 Neb., 620.)   But in this case both of the Stoddards were defendants.   If the property was a homestead, that fact was a good defense to the charge of fraudulent alienation, at least to the extent of the homestead exemption.   The issue might have been presented and determined.   We do not here decide, for the question is not presented by the record, whether or not the homestead may still be claimed prior to the sale, but we do hold that it was improper to order that the sale should be made without prejudice to the homestead right.   As repeatedly said, the homestead right is a personal privilege which may be waived, and certainly these defendants, not having asserted any such right in this proceeding, where they have had an opportunity so to do, they should not be permitted after a sale to assert it. (*Rector v. Rotton*, 3 Neb., 171; *McHugh v. Smiley*, 17 Neb., 620.)   The decree will be modified by deducting from the amount of Mrs. Stoddard's lien the sum of $2,413.75, as above stated, and by striking out the clause above quoted, reserving the right of homestead.

DECREE ACCORDINGLY.