CHARLES KLAMP, APPELLANT, v. ELLEN KLAMP ET AL., APPELLEES.

| | |
|---|---|
| 51 | 17 |
| 51 | 367 |
| 5J | 17 |
| s58 | 748 |
| 58 | 749 |
| 58 | 750 |

FILED MARCH 17, 1897.   No. 7170.

1. **Resulting Trust: EVIDENCE.** To establish a resulting trust the evidence must be full, clear, and satisfactory.

2. ———: ———. *Held,* That the evidence in this case was insufficient to raise a resulting trust in favor of the plaintiff in the property drawn into controversy.

3. **Homestead: CONVEYANCE.** The question of the validity of the conveyance of a homestead by the husband to the wife, she not joining in the conveyance, *held* not raised in the pleadings or the evidence; hence not presented for adjudication.

6

APPEAL from the district court of Lancaster county. Heard below before TIBBETS, J. *Affirmed.*

*Lamb, Adams & Scott* and *Howard & Bridges,* for appellant.

*Sawyer, Snell & Frost, contra.*

HARRISON, J.

It appears that the two main parties litigants in this cause,—Charles Klamp, who instituted the suit in the district court of Lancaster county, and Ellen Klamp, of defendants therein,—are husband and wife; that they were married in the city of Chicago on or about the 7th day of February, 1867. After residing in Chicago a few years they removed to. the town of Barrington, Illinois, and thence, in the year 1875, to Lancaster county, this state, where a piece of land was purchased of the Burlington & Missouri Railroad Company, on which they settled and it became, or they made it, a home. On the 8th day of August, 1893, a piece of school land in Seward county was purchased of one of the bankers in Seward (the name does not appear in the evidence), who assigned the contract of purchase thereof to Ellen Klamp. On the part of the husband it was asserted in this action that, at the time of the marriage of the parties, he was owner of a house and lot in Chicago, and that the wife had no money or property. It was claimed for appellee that she, at the time last stated, had some money with which she then purchased a lot in Chicago and had erected thereon a house. She further stated that the appellant, who was a carpenter, labored on the house while it was in process of erection. The house was destroyed by fire in the great Chicago fire in 1871. The building was insured, but the company under whose policy it was insured was insolvent or for some reason did not pay the insurance money. Mrs. Klamp both pleaded and introduced evi-

dence to prove that she had some money, specifically stating whence it came, with which she caused another house to be constructed on the lot, and that the appellant contributed his labors in forwarding the building.   When the parties left Chicago for Barrington, the Chicago property was exchanged for some property in Barrington, which was subsequently sold for $3,000, a portion of which was in cash, and the balance evidenced by promissory notes of the purchaser.   The titles of the Chicago and Barrington properties were claimed, during the trial, to have been in the name of appellee, Ellen Klamp. From the proceeds of the notes given for a part of the price of the Barrington property as they were paid the payments of the purchase price of the Lancaster county farm were made.   At the time of its purchase the contract, which was one providing for payment by installments, was issued by the railroad company to Charles Klamp as purchaser.   He afterwards assigned the contract to the appellee, to whom, on June 2, 1879, a deed was executed by the railroad company and delivered August 7, 1879.   The Seward county land was bought with money derived from the sale of live stock and produce from the Lancaster county farm, together with small contributions of earnings of some of the children of the parties, also money earned by Mrs. Klamp in working for neighbors and some paid to her for services as a midwife.   The appellant, during a portion of the time since the family commenced its life on the Lancaster county farm, has spent his time there and assisted in erecting buildings thereon, and in the general labors of the farm; during other portions of the time he was engaged to work as a carpenter, where such work was to be done, and he obtained employment.   What he did with any wages he may have received does not appear.   It was not shown, however, that any specific amount of them was expended in improvements on the farm or in the support of the wife and children.   Mrs. Klamp lived on, and apparently managed the farm, sold, or caused to be sold, the live stock

and produce of the farm, and received the moneys derived from such sales. To this last there were a few exceptions. The appellant is shown to have sold some stock and a large quantity of grain from the farm, and appropriated the proceeds thereof and a team of horses and wagon to his own particular uses and purposes. With these he went down to Kansas, where he stayed several months, and then returned to Nebraska and the farm, with neither money, team nor wagon, bringing back with him one old pony and buggy and a revolver, but the inference may be drawn from the evidence (though possibly it is not material) that he had, while gone, spent the money and probably the proceeds of the property in catering to the satisfaction of his tastes and inclinations in certain directions. The appellee finally sold all the live stock and implements on the farm, also the household goods, and leased the farm to a son-in-law, and thus destroyed the home as it existed, though the appellant, if we give credence to the evidence adduced at the trial, had not shown a very great partiality for the home for some time prior to its disestablishment by the appellee. The appellant asserted that he had furnished the original consideration, from which, with additions thereto, made by the united efforts and labors of his wife and self, combined with the increase in value of accumulated property, had grown, or been derived, all the belongings, either real or personal, of which the parties were owners and which, at the time of the commencement of this action, were, to the extent an examination of the title thereto would disclose the fact, owned by the appellee; that the titles had been placed in her name for the reason that she was contentious and quarrelsome and had demanded of and importuned him that the titles be so placed, to which demands he had finally acceded. Appellant sought in this action to have it decreed that the lands and other property were held by appellee in trust for him; that she convey the lands to him, account for and turn over all moneys received from sales of stock or produce, rents of lands, etc.,

and be enjoined from in any manner, at any time, interfering with his use, occupation or management of the lands.   Issues were joined, of which a trial resulted in a decree favorable to the defendant, from which this appeal has been perfected.

It was not and is not claimed that there was the creation of an express trust,—indeed, on oral argument in this court, it was agreed that there was none,—but it was insisted that, from the acts and relations of the parties in respect to the properties involved, there was necessarily evolved an implied or resulting trust in favor of appellant, and with which appellee was charged.   In this connection we are cited by counsel for appellant to the decision of this court in the case of *Brownell v. Stoddard*, 42 Neb., 177, in which appears a statement on the subject of resulting trusts, which we deem quite pertinent in the present cause, as follows: "The doctrine of resulting trusts is founded upon the presumed intention of the parties.   'A trust is never presumed or·implied as intended by the parties unless, taking all the circumstances together, that is the fair and reasonable interpretation of their acts and transactions.'   (2 Story, Equity Jurisprudence, sec. 1195.) The doctrine of resulting trust from payment of the consideration money 'has its origin in the natural presumption, in the absence of all rebutting circumstances, that he who supplies the money means the purchase to be for his own benefit, rather than for that of another.'   (2 Story, Equity Jurisprudence, sec. 1201.) 'As the resulting or implied trust is in such cases a mere matter of presumption, it may be rebutted by other circumstances established in evidence and even by parol proofs which satisfactorily contradict it.   *   *   *   Thus, for example, if a parent should purchase in the name of a son, the purchase would be deemed *prima facie* as intended as an advancement so as to rebut the presumption of a resulting trust for the parent.   But this presumption that it is an advancement may be rebutted by evidence manifesting a clear intention that the son shall take as trustee,'

(2 Story, Equity Jurisprudence, sec. 1202. See 2 Perry, Trusts, sec. 126.) The foregoing statements seem elementary but, in cases where distinctions were not necessary, the general principle has been so often stated that where one pays the consideration, and a title is taken in another, a trust results in favor of the one paying the consideration, that we are apt to regard this as a statement of an absolute legal proposition, and not merely as a rule of evidence. In the more careful statements of the rule, its operation is restricted to transactions between strangers; and it necessarily fails wherever the relationship of the parties is such that a payment of money would be presumed an advancement, rather than a loan. It is always said that, in order to establish a resulting trust, the evidence should be clear, satisfactory, and conclusive. (*Hoehne v. Breitkreitz*, 5 Neb., 110.)" The evidence in the case at bar was not only not satisfactory and conclusive in establishing such a trust in favor of appellant, but was amply sufficient to warrant the conclusion of the trial court that all the property in controversy was the separate and individual property of appellee.

It is urged that it is manifest from the pleadings and the evidence that the appellant conveyed the land and home to the appellee with the intention that she should hold the title and the place be kept and retain its home character for the occupancy and enjoyment of the husband and wife and other members of the family; also that the appellee received the conveyance with full knowledge of appellant's intention and in full agreement thereto and with the like intention; that if there be any technical rule by which the appellee must be allowed to hold the title, she should be charged with the payment to appellant of the value of what he has contributed to its original acquisition and subsequent improvement, and citations are made of opinions in which are expressed doctrines which would apparently warrant, in a proper case, the granting of relief of such a nature as counsel has set forth in the argument, but in the case now under consid-

eration the facts are not of a character to call for the application and enforcement of any such rules.

It is also argued that inasmuch as the farm in Lancaster county was the home or homestead of the parties at the time of the assignment of the contract of purchase by appellant to his wife, it was necessary for the wife to join in the execution of the assignment, and that as she did not do so the assignment is a nullity under the provision of section 4, chapter 36, Compiled Statutes, in which it is stated: "The homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both the husband and wife." Suffice it to say that no such question is presented by the record. There was no issue made by the pleadings on this point. It was specifically set forth in the petition that appellant procured the title of the Lancaster county land to be conveyed to the appellee. The manner in which or the proceedings or means by which he effected his purpose in this regard were not questioned or controverted; hence are not raised for consideration and adjudication at this time. It is further urged that the lease of the homestead was void by virtue of the same provision of the statute. This is effectually disposed of by the fact that the appellant joined in the lease of the farm, of which he now complains, apparently, as far as disclosed by the record, of his own free will and accord. The judgment of the district court must be

AFFIRMED.