HENRY G. KOBARG, APPELLEE, V. GEORGE GREEDER, APPELLANT.

FILED APRIL 21, 1897.   No. 7286.

1. **Husband and Wife: GIFTS OF REALTY.** Where a husband purchases real estate with his own funds and causes the legal title thereof to be conveyed to his wife, the presumption is that the husband intended such real estate as a gift to his wife.

2. **Trusts: PAROL DECLARATION.** In order to fasten a trust upon real estate by means of a parol declaration the words employed must amount to a clear and explicit declaration of trust. They must also point out with reasonable certainty the subject-matter of the trust and the person who is to take the beneficial interest. Loose and indefinite expressions and such as indicate only an incomplete and executory intention are insufficient for this purpose. *Roddy v. Roddy*, 3 Neb., 96, followed.

3. ———: **GIFTS: EVIDENCE.** Evidence examined, and *held* insufficient to sustain the finding of the district court that the property in controversy was held in trust by the wife for the husband.

APPEAL from the district court of Douglas county. Heard below before AMBROSE, J.   *Reversed and dismissed.*

*W. S. Shoemaker*, for appellant.

*George F. Wittum* and *Frank H. Gaines*, contra.

RAGAN, C.

In 1878 Bernard Carstens (hereinafter called Bernard) purchased ten acres of land in Douglas county and caused his vendor to convey the same to his, Bernard's, wife Dora by an ordinary warranty deed, which was then and there duly recorded. Bernard and his wife and their children lived upon this land until 1888, when Bernard died. The widow and her children continued to make their home upon the land, and in 1891 she married George Greeder. Some time after her marriage to Greeder Dora, conveyed, through a third party, this real estate to Greeder, and some time after this conveyance she died. Henry Kobarg, as next friend for the minor children of Bernard and Dora, brought this suit in the district court of Douglas county against George Greeder to have it decreed that Dora held the real estate conveyed to her in trust for her husband Bernard and the title thereto quieted and confirmed in his heirs. Kobarg had a decree as prayed and Greeder has appealed.

1. We assume for the purposes of this case that the evidence establishes that Bernard purchased and paid for the real estate in question; and there is no controversy as to the fact that Bernard's vendor, at the time of said purchase, conveyed the real estate by warranty deed to Dora. The record is silent as to what, if anything, occurred at the time this conveyance was made. Neither witness nor paper tells us anything that was said or done by any of the parties connected with the conveyance at the time it was made. The evidence shows that Bernard purchased and negotiated for the property. It tends to show,—and we assume that it does show,—that he paid the consideration named; and at the time of the purchase the title was conveyed to his wife. Where a person purchases real estate with his own funds and places the title in the name of a stranger the law presumes that he made such purchase for his own use and that the stranger holds it in trust for him. But where the purchaser is a married man and the title of the real

estate purchased is conveyed to his wife, the presumption is that the purchaser intended the real estate as a gift to his wife. (*Creed v. Lancaster County Bank*, 1 O. St., 1; *Brownell v. Stoddard*, 42 Neb., 177; *Gray v. Gray*, 13 Neb., 453; *Klamp v. Klamp*, 51 Neb., 17.) We have, then, but to inquire whether the finding of the district court, that Dora held the title to this property in trust for her husband, is sustained by sufficient evidence.

In *Roddy v. Roddy*, 3 Neb., 96, it was held: "In order to fasten a trust on property of any description by means of a parol declaration the words employed must amount to a clear and explicit declaration of trust. They must also point out with reasonable certainty the subject-matter of the trust and the person who is to take the beneficial interest. Loose and indefinite expressions and such as indicate only an incomplete and executory intention are insufficient for this purpose." To the same effect see *Falsken v. Harkendorf*, 11 Neb., 82; *Robinson v. Jones*, 31 Neb., 20.

A brother of Bernard was called as a witness for the plaintiff below, and after testifying that Bernard bought and paid for the real estate in controversy, that he had a conversation with him and his wife in reference to the land purchased about two years after its purchase, he was asked what his brother said, and answered as follows: " 'I tell you if I was in my brother's place I would have the property in my name;' and she says she would like to do it, but then my brother objected. He didn't want it. I says, 'It always looks like a man; if the property is in the lady's name, it looks like he worked only for her;' and then she says to my brother: 'Well, if you think it is better, then we do it. I don't care; that property belongs to you and I would like to see it better done,' and then they agreed together to do that, and I never asked him after that time if they did it." This evidence shows that the propriety of the witness was shocked and his vanity wounded because his brother's wife held the title to the real estate on which

they lived, and that the wife was willing to convey the real estate to the husband if the husband demanded it, but he did not want it conveyed to him; and though the wife may then and there have agreed to convey the real estate to her husband, the promise was without consideration and was not one which Bernard could himself have enforced.

Another witness called for the plaintiff below testified to his acquaintance with Bernard, and that soon after the time the property was purchased and Bernard and his wife took up their residence upon it he was at their house. The witness then proceeds as follows: 'I went out there and I had a little work to do for them,—killing a hog,—and when I was there he told me to come into the house with him, and we went in and had a cup of coffee, and after a little he asked me how I liked his place and how I liked everything,—if it didn't look like home. I said, 'Yes; it looks very much like it;' and he pointed to his wife and called her by name,—called her Dora, or something like it,—and said: 'That is my pretty wife.' And he said: 'I gave her that property,' and she objected. She didn't object, but she raised right up and says: 'For me to take care of for the children for him.' ''

Another witness called for the plaintiff below testified to a conversation with Dora as follows: "Why, she told me that August Carstens [this was a brother of Dora's husband] had objected to her holding the property in her name and she told her husband she did not care whether she would have the title or not; that he should take it back in his name because it was his." On cross-examination she related the conversation with Dora as follows: "She said she was willing; she didn't care whether it was in her name or in his name; that she wanted him to take it back."

It does not clearly appear whether this alleged conversation with Dora occurred before or after she conveyed the real estate in controversy to the appellant, but we assume that it occurred before. This is all the com-

petent and relevant evidence upon which the decree appealed from rests, and it is entirely insufficient to overcome the presumption that Bernard caused this real estate to be conveyed to his wife Dora because he intended thereby to make her a gift of it. This record shows that Bernard Carstens, at the time he was married, was a man past middle age; that he had been for some years a sailor; that he was rather fond of intoxicating liquors, but nevertheless an industrious and frugal man; that at the time he married Dora she was about seventeen years of age; that he was very fond of her, and the probability is that this real estate was conveyed to Dora in pursuance of a promise that he made her to purchase and give her a home if she would marry him. The evidence discloses that they lived upon this real estate from 1878 until Bernard died, some ten years later; that four or five children were born to them, and that they all lived happily together. They were laboring people. They followed the business of gardening for a living. Before Bernard's death he purchased other real estate besides this in controversy, and he had the title to that taken in his own name. Nowhere in this record is there evidence of an explicit declaration made by Dora that she held this real estate in trust for her husband. No witness swore that Bernard Carstens at any time or place ever claimed that his wife held this real estate in trust for him. The decree of the district court is reversed and the action dismissed at the cost of Henry Kobarg.

REVERSED AND DISMISSED.