MAX C. BRODSKY ET AL., APPELLANTS, V. NATHAN BRODSKY ET AL., APPELLEES.

272 N. W. 919

FILED APRIL 30, 1937. No. 29837.

*Weaver & Giller,* for appellants.

*Fradenburg, Webb, Beber, Klutznick & Kelley, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

EBERLY, J.

This is a suit in equity. Plaintiffs, appellants, are a son and daughter of defendant Nathan Brodsky by his former wife, now deceased. Defendant Ann Brodsky is the present wife of defendant Nathan Brodsky, and will hereinafter be referred to as Ann Stein Brodsky. The petition contains allegations as to the method and manner of acquirement, by the joint efforts of defendant Nathan Brodsky and his wife, Anna Brodsky, of certain real estate and personal property. It charges that, though the legal title was taken in the name of defendant Nathan Brodsky, their mother, in equity, was at all times the owner of an undivided one-half thereof; that their mother, Anna Brodsky, died on July 10, 1928, intestate, seised and possessed of such interest; that defendant Nathan Brodsky married Ann Stein Brodsky in 1932; and that on or about July 14, 1933, he deeded all of his real estate, which theretofore had been the joint property of himself and his deceased wife, Anna Brodsky, to his present wife, Ann Stein Brodsky, under deeds of survivorship, so that in event of Nathan Brodsky predeceasing his present wife, Ann Stein Brodsky, all of the property interest of Anna Brodsky, the first wife, would vest in Ann Stein Brodsky, and plaintiffs would be deprived of their right of inheritance thereby. The prayer of plaintiffs' petition is that they may be awarded as their inheritance from their mother's estate, which is now held in trust by defendant Nathan Brodsky, one-third of all property de-

scribed in their petition, and for proper judgment to secure the same.

To this petition, defendants pleaded the statute of limitations, and denied generally "each and every allegation contained" therein.

Upon trial to the district court, a decree was entered finding "upon the issues joined generally in favor of defendants and against plaintiffs," and dismissing the petition. From this judgment plaintiffs appeal.

This is an attempt to establish a resulting trust in favor of the plaintiffs, the son and daughter, against their father as to certain property alleged to have been accumulated during the married life of their father and mother, now deceased, through the joint efforts of both, but the legal title thereof admittedly at all times being in the name of the father, Nathan Brodsky.

In the determination of the issue presented by plaintiffs, it will be remembered that the rule is: "To establish a resulting trust the evidence must be full, clear, and satisfactory." *Klamp v. Klamp*, 51 Neb. 17, 70 N. W. 525. See, also, *Doane v. Dunham*, 64 Neb. 135, 89 N. W. 640.

While the details of a lifetime of labor by Brodsky are in some degree a matter of dispute in the evidence, it fairly appears (or at least the evidence to the contrary certainly lacks much of being full, clear, and satisfactory) that Brodsky was 71 years of age at the time of the trial; that he came to Omaha in 1893 and started to peddle fruits and vegetables; that he bought a small store at Seventeenth and Marcy streets about a year after the exposition of 1898. The value of the stock of merchandise then purchased was approximately $200, and the fixtures were valued at $25. The purchase was made by the purchaser on the basis of paying off the debts on the stock, amounting to $200. Brodsky continued his daily peddling from 4:30 or 5 a. m. until about noon. He ran the store after dinner, and his wife attended to customers during his absence in the forenoon. During this time his wife had a few weeks' employment as a seamstress at a low wage, the amount so

earned not being definitely fixed by the evidence but being contributed to the business or spent in the home. He also at one time purchased a store at Eighteenth and Leavenworth streets, which was continued approximately one year, and of which Nathan Brodsky took personal charge. The store at Seventeenth and Marcy streets, during this period, is said to have been supervised by Anna Brodsky. The store at Eighteenth and Leavenworth streets was then disposed of, and the business at the old location was continued until the site was required for railway improvement. It was then sold and a new location obtained by the purchase of the Monaghan building on Grace street. This place was subsequently improved by the erection of a brick store building thereon. Mrs. Brodsky took care of the family home, and from time to time assisted in the store. Certain real estate was purchased by Brodsky out of the profits of the store. Mrs. Brodsky contributed no money, save small earnings as a seamstress. She cared for the family and assisted in the business, but to what extent the evidence is not in agreement. It appears that Mrs. Brodsky was in ill health for some years prior to her death. This necessitated various trips to health resorts. The expenses of her last illness, which terminated with her death on July 10, 1928, amounted to $3,000. All of these expenses were defrayed by Brodsky. The family consisted of Brodsky, his wife, and the two children, now plaintiffs herein. They were educated in the public schools, and assisted in the family grocery business, and at their respective marriages they were each given $2,000 as a marriage present. When the mother died, the father turned over to the daughter $1,700, the proceeds of a savings account of her mother.

There is no competent evidence in the record which definitely negatives Brodsky's testimony as to his financial situation at the time of his wife's death. In substance, he stated that at the time his first wife died the grocery stock was worth between $600 and $700, and the fixtures were worth about $400; that he owed the wholesale houses, and had no savings account at the time of his wife's death;

that he barely had money enough to run the business, and was on a c. o. d. basis; and that he owed $700 or $800 in taxes at the time.

It appears without dispute that the business had always been carried on in the name of Nathan Brodsky. His was the sole name on the sign. Goods were purchased in his name alone, and the sales thereof were carried on by his direction. The real estate was purchased in his name, and by him, and the record title has at all times been continued with him as sole owner thereof. For a period of time Mrs. Brodsky was very active in assisting her husband. After 1905 her health largely prevented these activities. However, there is no evidence of an express agreement at any time, between her and her husband, for her compensation. Certain conversations between the father and his children were testified to by the latter, and denied by the former. But, even if true as the son and daughter testify, their probative effect would fall far short of establishing the foundation on which a resulting trust might rest. Even in cases of insolvency involving the advancement of money as part of the purchase price, we have long been committed to the view that no resulting trust arises in favor of a person furnishing the consideration for the purchase of property taken in the name of another, where the parties were sufficiently close so as to give rise to the presumption that a gift was intended. And where the parties are husband and wife, there is a presumption that the placing of title in the name of one spouse was intended by the other spouse as a gift. *Solomon v. Solomon,* 3 Neb. (Unof.) 540, 92 N. W. 124; *Brownell v. Stoddard,* 42 Neb. 177, 60 N. W. 380; *Kobarg v. Greeder,* 51 Neb. 365, 70 N. W. 921; *Doane v. Dunham,* 64 Neb. 135, 89 N. W. 640.

The rule also appears to be: "Though a wife renders services outside of the ordinary household duties, it is generally held that there is no implied obligation on the husband's part to pay her for them." 13 R. C. L. 1089, sec. 113. See, also, *Whitaker v. Whitaker,* 52 N. Y. 368, 11 Am. Rep. 711; *Coleman v. Burr,* 93 N. Y. 17, 45 Am. Rep. 160;

*Blaechinska v. Howard Mission and Home,* 130 N. Y. 497, 29 N. E. 755, 15 L. R. A. 215, and note; *Matter of Callister,* 153 N. Y. 294, 47 N. E. 268, 60 Am. St. Rep. 620.

In addition to the foregoing, the established rule of this jurisdiction is that, while equity appeals are tried *de novo,* yet, where the evidence is conflicting, this court will consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite.

A review of all the facts and circumstances disclosed by the evidence in this case clearly establishes the conclusion that the judgment of the trial court is correct, and it is

AFFIRMED.