FIRST TRUST COMPANY OF LINCOLN, GUARDIAN, APPELLANT, v. MAUD HAMMOND, APPELLEE.

299 N. W. 496

FILED JULY 29, 1941. No. 31006.

*Woods, Aitken & Aitken,* for appellant.

*Beghtol, Foe & Rankin, Walter E. Nolte* and *Boehmer & Boehmer, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

This case was before this court previously on a motion to dismiss the appeal. The opinion is reported in 139 Neb. 546, 298 N. W. 144. The First Trust Company of Lincoln, Nebraska, a corporation, plaintiff and appellant, instituted the action in the district court for Lancaster county, Nebraska, wherein it filed a petition against the defendant, appellee herein. Only the substance of the petition will be set out here. It was alleged that Willard Hammond and Maud Hammond, the defendant, are husband and wife, and that prior to the incidents and occurrences involved in this action Willard Hammond was the owner and possessed of a very considerable amount of property. On September 26, 1938, he was declared incompetent by the county court of Lancaster county, Nebraska, and on the same date the Continental National Bank was appointed guardian of his

person and of his estate. Thereafter, on May 17, 1939, through proper proceedings the First Trust Company of Lincoln, Nebraska, became the substituted guardian.

In the petition it was further alleged that on the 6th day of August, 1938, the defendant caused Willard Hammond to be committed to the Still-Hildreth Osteopathic Sanatorium at Macon, Missouri, where he had remained continuously to the date of the filing of the petition; that prior to the date of such commitment, and prior to the adjudication of incompetency and appointment of a guardian, Willard Hammond kept property of substantial value consisting of real estate bonds, certificates of stock, negotiable securities, cash and other personal property, of which he was the sole owner, in certain safety deposit boxes, to which boxes the defendant had access, and that defendant refuses to deliver up the keys to such boxes and refuses access thereto to the plaintiff; also that there were bank accounts belonging to Willard Hammond, from some of which he alone had the right of withdrawal, and from some of which he had the joint right of withdrawal with the defendant, knowledge of the location of which accounts the defendant refuses to disclose to plaintiff, all of which money and property defendant has fraudulently converted to her own use.

It is further alleged that plaintiff has demanded that defendant deliver over all of the property of Willard Hammond, which demand was refused.

It is further alleged that since August 6, 1938, the defendant has received the income from the real estate of Willard Hammond, the interest on his securities and the dividends from his stocks, all of which, together with moneys and other property of the said Willard Hammond, she has wrongfully and fraudulently converted to her own use.

The prayer is for injunctive relief against disposition of any of the money or property of Willard Hammond, that the defendant be declared a constructive trustee of all of the property in question, that the property be impressed

with a trust in favor of plaintiff as guardian, and for an accounting and order on the defendant to pay to plaintiff all sums found to be due Willard Hammond.

The answer admitted the corporate capacity of the plaintiff, that Willard Hammond had been declared incompetent on September 26, 1938, and that on the date of the commencement of this action plaintiff was the duly appointed guardian of Willard Hammond. Further answering the defendant generally denied the allegations of the petition.

On the issues presented by the pleadings a trial was had to the court. The plaintiff adduced all of its evidence, at the conclusion of which the defendant moved for a dismissal of plaintiff's petition. The motion was sustained in part and overruled in part. The defendant adduced no evidence in her own behalf. Decree was thereupon entered on April 3, 1940. In the decree the defendant was ordered, within 20 days, to deliver to the clerk of the district court for the use of plaintiff 47 certificates of stock, representing 3,071 shares in various corporations, the same having been found to be the property of Willard Hammond. No evidence of the value was adduced and none was fixed by the decree. As to all other claims of the plaintiff the petition was dismissed.

From that portion of the decree which is unfavorable to it the plaintiff has appealed. The defendant did not cross-appeal.

In three assignments, all of which are directed to the same proposition, the plaintiff insists that the trial court committed error in thus dismissing the petition of the plaintiff. It insists that the evidence shows that all of the money and property in question was the money and property of Willard Hammond, and that it had been taken wrongfully and converted to her own use by the defendant.

A list of property involved in this action is found in exhibit 161, introduced in evidence in this case. There can be no question under the evidence that, as between Willard Hammond and the defendant, the source of ac-

quisition of the money and property which was on hand on September 26, 1938, was Willard Hammond. The exact source of all of it is not disclosed, but a considerable inheritance came from a trust created by his mother which was distributed after her death. Apparently this was commingled with the property previously acquired. Likewise, there is no question in the evidence that after September 26, 1938, the defendant took all of this property. She either took it rightfully as her own, or she converted it wrongfully and fraudulently as is charged by the plaintiff. If she took it rightfully as her own, she did so by gift consummated on the 5th day of August, 1938. If it was not given to her by gift consummated on the 5th day of August, 1938, then she converted it wrongfully and fraudulently and must be required to account to the plaintiff.

Is a gift by Willard Hammond to the defendant of any or all of the property involved shown by the evidence of the plaintiff? As has already been indicated the defendant offered no evidence. The record discloses no conversations between Hammond and his wife on the subject of gift prior to the 5th day of August, 1938. At all times prior to August 5, 1938, all business transactions relating to the property in question were carried in fact and on the books by, for and in the name of Willard Hammond. For a number of years prior to December, 1933, Willard Hammond kept his securities in safe deposit boxes at the Lincoln Trust Company. He and defendant had access to the boxes under a lease with the trust company. In December, 1933, while Hammond was away at the sanatorium named, defendant caused the securities to be removed and placed in safe deposit boxes at the First Trust Company, to which boxes both parties likewise had access. This arrangement continued until after Hammond went to the sanatorium in August, 1938. In one of the boxes was an envelope containing securities on which was noted that this was a Willard Hammond and Maud Hammond trust. Nothing appears in the record indicating how this was set up or whether or not it was in fact a trust. Hammond dealt

with it and carried on transactions in relation to it in fact and on his books as his own personal property.

Prior to April, 1932, the defendant had little or no contact with the business affairs of her husband. On April 6, 1932, Hammond went to Still-Hildreth Osteopathic Sanatorium where he remained until May 30, 1932. He again went on May 2, 1933, and returned on May 22, 1933. He went a third time on November 8, 1933, and remained to June 23, 1934. On August 6, 1938, he went back and has never returned. After April 6, 1932, defendant participated largely in the conduct of the business affairs with the assistance of the bookkeeper of Hammond.

On October 30, 1933, a deposit of $19,467.92 was made in a joint savings account of Willard Hammond and the defendant. On August 5, 1938, this account amounted to $20,648.56.

In April, 1932, while Hammond was in the sanatorium, the defendant opened a joint checking account in her name and that of Willard Hammond at the First National Bank. This account was never authorized by Hammond, but it was allowed to remain current and was never closed until March 8, 1939, when it was closed by the defendant. On August 5, 1938, the balance in the account appears to have been $2,059.87. The account was opened by the deposit of an accumulation of business checks belonging to Willard Hammond. It was kept current from beginning to end by the avails of Hammond's business.

Over the years income tax returns were made for defendant and her husband. Sometimes they were joint and at other times not. It appears that the reason for the variations was that the bookkeeper went over the various plans and selected the one in each instance which would require the smallest payment of tax.

On August 5, 1938, there were in the boxes securities which had been indorsed in blank and which could have been transferred without any further manual act except delivery.

This, we think, is a fair reflection of the facts and cir-

cumstances from which the defendant seeks to draw inferences to support the claim of defendant that Willard Hammond, on the 5th day of August, 1938, gave to the defendant as her absolute property, or in joint tenancy with him, all of the property involved in this action.

If a gift by Willard Hammond to the defendant was ever consummated, it was done on August 5, 1938. The defendant did not testify in this case, but evidence given by her in another proceeding was admitted by the court on this subject. That testimony is the following: "Q. Do you, Mrs. Hammond, recall when Willard came home on the night of August 4, 1938? A. Yes. Q. Do you recall what he talked about there at that time? A. Yes. Q. Now just tell the jury what he said. A. Well, he came home very upset and he was just almost exhausted; and he ate his dinner, and I knew something was wrong. And we went out and sat on the porch and he finally—he turned around and he says 'Do you know I have just ruined us? I have ruined you?' And then he told me about Mrs. Fling having them in the vault there for five hours trying to get his own securities away from him, and he wasn't trying to get anything of hers; but she wanted his. He was very nervous. Then he had some checks there and he gave them to me to hold, and he also gave me his keys. I said 'Well, if you feel like that the next morning, we will go down and take your things out of that box,' which we did. And he gave them to me. And he says 'Now, you protect yourself, and, also, with the savings account.' Q. And then he turned over to you the checks? A. Yes. Q. And what did you do with them? A. I put them in the joint account. Q. In the First National Bank? A. Yes, the First National Bank."

This is all of the direct evidence there is on the question of gift by Willard Hammond to the defendant. There is other testimony of the defendant, admitted from other hearings, indicating the previous attitude of defendant toward what is now claimed by her to be a gift, but it can have no bearing on any question except the good faith of

the present claim, hence it need not be set out. The question is not what defendant thought, but what Willard Hammond did.

Under the evidence as outlined we must now determine whether or not Willard Hammond, on August 5, 1938, made a gift in whole or in part, absolutely or in joint tenancy, to the defendant in this case.

To make a valid and effective gift *inter vivos,* there must be an intention to transfer title to the property, and a delivery by the donor and acceptance by the donee, and the transfer must be so complete that if the donor again resumes control over it without the consent of the donee he becomes liable as a trespasser. *Ladman v. Farmers & Merchants Bank,* 130 Neb. 460, 265 N. W. 252; *Smith v. Pacific Mutual Life Ins. Co.,* 130 Neb. 501, 265 N. W. 534.

The defendant states as a conclusion, in the following language, that Willard Hammond gave "his things" to her; "And he gave them to me." Specifically she states that he delivered to her an accumulation of checks representing an aggregate of approximately $5,000, and a certain check for $15,000 which he had received in 1935 and which he had never deposited or cashed. The accumulated checks were deposited by defendant in the joint account in the First National Bank.

This evidence is insufficient to show an intention on the part of Willard Hammond to relinquish all further dominion over his property or to show an actual or constructive delivery thereof to the defendant, except as to the check for $15,000, and the accumulation of checks amounting to about $5,000. We think that there is sufficient evidence of a gift *inter vivos* as to these items when coupled with the legal presumption which follows transfer of property by one spouse to the other.

This court, in connection with the placing of title to real estate by one spouse in the other, has laid down the rule that, where the parties are husband and wife, there is a presumption that the placing of title in the name of one spouse was intended by the other spouse as a gift. *Koborg*

*v. Greeder,* 51 Neb. 365, 70 N. W. 921; *Veeder v. McKinley-Lanning Loan & Trust Co.,* 61 Neb. 892, 86 N. W. 982; *Doane v. Dunham,* 64 Neb. 135, 89 N. W. 640; *Brodsky v. Brodsky,* 132 Neb. 659, 272 N. W. 919. No reason is apparent why the same rule should not apply in case of transfer of personal property.

We are of opinion that the trial court was correct, wherein the effect of its decree was to hold that the plaintiff had no right to exclusive possession or control over the joint savings account and the money which was in the joint checking account on August 5, 1938. The issues as presented by the pleadings do not permit of a determination of rights of joint tenants in and to these joint accounts during the existence of the joint tenancies. Section 8-164, Comp. St. 1929, provides as follows: "When a deposit in any bank in this state is made in the name of two or more persons, deliverable or payable to either or to their survivor or survivors, such deposit or any part thereof, or increase thereof, may be delivered or paid to either of said persons or to the survivor or survivors in due course of business." This court, in construing this section of the statute, has held that where a wife deposited money in a bank payable to herself or husband as joint tenants with a right of survivorship, and not as tenants in common, a completed gift is consummated by the wife to the husband, even if the husband never had manual possession of the pass-book; also, that a deposit so made is presumed to have been made with donative intent and for the benefit of the husband, with the intention of giving him, if he survives, the complete title to the funds, and further that the statute is intended for the protection of the bank and also to fix the property rights of the persons named, unless the contrary appears from the terms of the deposit. *In re Estate of Kamrath,* 114 Neb. 230, 206 N. W. 770; *In re Estate of Johnson,* 116 Neb. 686, 218 N. W. 739; *Kehl v. Omaha Nat. Bank,* 126 Neb. 695, 254 N. W. 397.

The property rights of the defendant and Willard Hammond having been fixed as to the savings account, and as

to the checking account as of its condition on August 5, 1938, the court, in this case, on the issues tendered, was without right to interfere or make any orders in relation thereto at the request of the plaintiff.

It would be inequitable and improper to hold that any additions to the joint checking account made by defendant out of income from or sale of property of Willard Hammond after August 5, 1938, should become part and parcel of the joint checking account to which defendant was entitled. Clearly such additions would have the same character as property not sold or income not deposited.

We conclude, therefore, that the trial court erred in dismissing the petition of plaintiff to the extent that it was dismissed; we conclude that the evidence shows that all of the property in question here, except the $15,000 check, the accumulation of checks amounting to about $5,000, the joint savings account amounting to $20,648.56, and the joint checking account amounting to $2,059.87, was the property of Willard Hammond and that the plaintiff was entitled to its possession as guardian; we conclude that the properties not excepted herein were wrongfully converted to her own use by the defendant, and that such properties were constructively in her trust, and that she should be required to deliver these properties, together with the income therefrom and accretions thereto, to the plaintiff.

This case must then be controlled by the holding in *Lucas v. Lucas,* 138 Neb. 252, 292 N. W. 729. In that case it was held: "Where a trial court in an equity case erroneously dismisses the suit at the close of plaintiff's evidence, this court ordinarily will remand the case for a new trial."

The decree of the district court, therefore, to the extent it was appealed from, is reversed and the cause remanded for a new trial in conformity with the findings herein.

REVERSED.

On motion for rehearing, the following supplemental opinion was filed November 21, 1941.

YEAGER, J.

On consideration of the motion for rehearing, and a

further analysis of the record and the proceedings, it is deemed necessary to supplement the original opinion in this case found *ante,* p. 330, 299 N. W. 496.

In the opinion it is stated: "On the issues presented by the pleadings a trial was had to the court. The plaintiff adduced all of its evidence, at the conclusion of which the defendant moved for a dismissal of plaintiff's petition. The motion was sustained in part and overruled in part. The defendant adduced no evidence in her own behalf. Decree was thereupon entered on April 3, 1940." This is a correct reflection of the record to this extent, but it ignores the fact that after the motion the plaintiff rested its case as did also the defendant.

This situation then renders inapplicable the rule adopted from *Lucas v. Lucas,* 138 Neb. 252, 292 N. W. 729, as follows: "Where a trial court in an equity case erroneously dismisses the suit at the close of plaintiff's evidence, this court ordinarily will remand the case for a new trial." This rule should have no application where both parties have rested, as in the case at bar.

This departure from the original opinion requires, on the weight of evidence, that this court shall find that all of the property and estate in question here, except the $15,000 check, the accumulation of checks amounting to about $5,-000, the joint savings account amounting to $20,648.56, and the joint checking account amounting to $2,059.87, was the property of Willard Hammond, and that the plaintiff was entitled to its possession as guardian; that the properties not excepted were wrongfully converted to her own use by the defendant, that such properties were constructively in her trust, and that she should be required to deliver these properties, together with the accretions thereto, to the plaintiff.

The decree of the district court, therefore, to the extent it was appealed from, is reversed, with directions to said district court to enter decree and judgment in conformity with the opinion as modified by this supplemental opinion.

REVERSED, WITH DIRECTIONS.