LYDA B. MARLEY, APPELLEE, V. NEW YORK LIFE INSURANCE COMPANY, DEFENDANT, GRACE JENSEN, APPELLANT.

24 N. W. 2d 652

FILED OCTOBER 25, 1946. No. 32104.

*J. M. Emmert*, for appellant.

*Brown, Crossman, West, Barton & Fitch, I. J. Dunn*, and *Abel V. Shotwell*, for appellees.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and Pollock, District Judge.

SIMMONS, C. J.

This is an action to determine whether the benefits of a life insurance policy shall be paid to plaintiff, a sister of insured, or to the divorced wife of insured, who was impleaded as a party and will hereinafter be referred to as the defendant. The trial court decreed that payment should be made to plaintiff. Defendant appeals. We affirm the decree of the trial court.

As of February 11, 1907, the New York Life Insurance Company issued a life insurance policy, wherein, Charles J. Jensen was the insured and Mrs. Chris Jensen, mother of the insured, was beneficiary. The policy required the payment of 20 annual premiums. Right of revocation of the designated beneficiary was reserved. The policy also provided: "If any beneficiary shall die before the Insured the interest of such beneficiary shall vest in the Insured."

At the time of the issuance of the policy, Charles J. Jensen was unmarried. He married the defendant, Grace Jensen, on August 21, 1917.

Mrs. Chris Jensen, the mother, and designated beneficiary, died October 29, 1935. It appears that the policy had at all times been in the possession of the mother and was found among her papers. It further appears that the mother and son kept their papers together, worked together, and that the mother often kept his papers for him. Thereafter, the policy and items of personal property were delivered to the insured, Charles J. Jensen. The policy was placed in a drawer in a chest at his home.

Charles J. Jensen became seriously ill with tuberculosis in 1934, so much so that he was required from that time until his death to spend long periods in a hospital. He was at home at the time of his mother's death. On January 10, 1936, he again went to the hospital where he remained for some time. While there, he instructed his wife to get the insurance policy and have herself designated as beneficiary. That was done. On January 20, 1936, Charles J. Jensen signed a change of beneficiary form. This named "Grace Jensen—wife" as the beneficiary "who is to receive the proceeds" upon proof of the death of the insured. The change of beneficiary was endorsed on the policy as of January 20, 1936. Thereafter, the policy was taken to the insured at the hospital, examined by him, and given into the possession of Mrs. Jensen. She took it to the home. The evidence as to this transaction will be set out more in detail later in this opinion.

Nothing further occurred about the policy until the events now to be related, save that dividends on the policy were paid to and received by the insured.

On March 2, 1943, Mrs. Grace Jensen sued the insured for divorce and later secured a decree of divorce. Mr. Jensen was in the hospital, when the action was commenced. Mrs. Jensen secured an order restraining him from going into the home. Thereafter, Mr. Jensen made a demand for the delivery to him of this policy and other personal property. So far as the policy is concerned, the demand was refused, Mrs. Jensen claiming to be the owner of the policy. Mr.

Jensen then made application in the divorce action for an order requiring the delivery of the policy and other items of personal property to him. It was resisted as to the policy. The court did not grant the application as to the policy, and at the same time declined to determine the ownership of the policy.

On December 17, 1943, the insured wrote the insurance company reciting his difficulties and notifying it that he revoked the naming of Grace Jensen as beneficiary, and desired the beneficiary changed from Grace Jensen to Lyda B. Marley, plaintiff herein. On January 5, 1944, the company replied in part as follows: "With respect to your contemplated change of beneficiary, may we say that the Company will not recognize a change of beneficiary until the policy itself has been submitted to the Home Office for endorsement in accordance with its terms. If a notice of change in beneficiary is received, we will keep it in the Company's files and in the event that the policy is in force to the date of your death, the Company will very likely seek to join both the beneficiary of record and the new beneficiary in any settlement or we might pay the proceeds in the Court and interplead both beneficiaries. Under the circumstances, we have placed your request for change of beneficiary of Dec. 17, 1943 in favor of Lyda B. Marley, on file."

Charles J. Jensen died October 1, 1944. On October 10, 1944, plaintiff herein advised the insurance company of the insured's death and demanded payment. On October 23, 1944, the insurance company wrote plaintiff that it would not undertake to decide who was entitled to the proceeds of the policy, and that if the claimants could not agree, it would await suit on the policy by one or the other claimant, pay the proceeds of the policy into court, and interplead the other.

Thereafter, plaintiff sued the insurance company to recover the benefits of the policy. The insurance company answered, interpleaded Grace Jensen and paid the money into court. Issues were made up between plaintiff and de-

fendant, and trial had, resulting in a decree ordering the money paid to plaintiff.

Defendant appeals, presenting here three contentions: (1) That the insured made a gift of the policy to Grace Jensen in January 1936; (2) that the change of beneficiary from Grace Jensen to Lyda B. Marley, plaintiff, was not valid and legal, the policy not having been surrendered to the company for endorsement as provided by its terms; and (3) error of the trial court in refusing to admit certain evidence offered by defendant at the trial. The first and third contentions will be discussed together.

The evidence as to the alleged gift is as follows: Plaintiff testified that the policy was found with her mother's possessions and by her delivered to the insured about two weeks after the mother's death, and that she then told insured he should designate a beneficiary and that insured told her he would take care of that later. Plaintiff further testified that later on, while insured was in the hospital and in a serious condition, he told her that he was worried because of his condition; that he thought the end might come; that he decided it was well to put the policy in Mrs. Jensen's name, so that she would have cash immediately if anything should happen to him; that he told her (plaintiff) how he had made the change by having Mrs. Jensen bring him the policy and by sending Mrs. Jensen to the company to have it changed; that she returned the policy to him; and that he told her to take it home and put it in their box "in that box she has my discharge papers."

Defendant Mrs. Jensen testified that after Mr. Jensen brought the policy home, following the mother's death, it was placed in a drawer in a chest in Mr. Jensen's room; that shortly after Mr. Jensen went to the hospital, he told her where to find the policy, to take it to the company and "have that made over to me" and instructed her how to have it done; that she took the policy to the company, had the change made, and when it was returned to her, she took it to the hospital to Mr. Jensen; that he looked it over,

said it was all right, handed it to her and said, "You take this; you will probably need it." Nothing more was said. A daughter who testified that she was with defendant at the time, stated that Mr. Jensen said, "Here, take this, you may need it."

Mrs. Jensen testified that she took the policy home and placed it in a "little box of mine in my closet." This box contained her personal things, Mr. Jensen's army discharge papers, and his policy of government life insurance. At that time Mr. Jensen had two boxes at home containing his papers. He always kept them locked and separate from the box in question. The daughter corroborated this testimony also.

As a part of plaintiff's case in chief, it was shown that in the divorce proceedings, Mrs. Jensen had testified about this policy; that it was in her husband's possession; that at his direction she had gotten it from his drawer; that she took it down to the insurance company and had the beneficiary changed as he instructed her to do; and that at the time Mr. Jensen went to the hospital in December 1942, the policy "was in the box at home, there where I keep the papers." Q. "In the tin box where he kept —" A. "No, this box here. Little papers that we had together." Q. "You and he had different boxes?" A. "The other box was his. This one we had together." These questions and answers were offered and received as admissions against interest. They were read from the bill of exceptions in the divorce case and the testimony was that they were asked of and answered by the defendant.

At the trial of this action Mrs. Jensen testified in her case in chief that from the time the policy came into her possession until the time of the divorce proceedings, the policy was "In my box in my closet." She further was asked this question: "Mrs. Jensen, I want you to explain to the Court your statement that you made in the divorce action that it was the box in which you had things together?" and gave this answer: "Well, I felt that it was a box in which

we had things together, for that reason that the insurance policies and his discharge papers were there." She testified that there was no lock on the box.

Defendant then offered in evidence other testimony appearing in the bill of exceptions as having been given by the defendant in the divorce proceedings, on the theory that all the evidence should be before the court, and offered to prove by Mrs. Jensen that the questions were asked and the answers given. The defendant then offered to prove the questions and answers. The trial court refused to admit the testimony.

Other than the evidence set out above which the plaintiff offered, the offered testimony showed that Mrs. Grace Jensen had testified that Mrs. Chris Jensen, the mother, had taken out the insurance, paid the premiums, and wanted to give the policy to defendant after her marriage to the insured; that defendant refused to accept the policy; that the mother again offered it after the daughter was born; and that she (defendant) again refused to accept it. In this connection it should be pointed out that defendant's daughter testified without objection that Mother Jensen had wanted defendant to take the policy and that she (defendant) refused to accept it.

Defendant's third contention here is that the trial court erred in refusing to admit this testimony. We see no merit in the contention. Disregarding serious procedural questions, it is quite apparent that the offered evidence was not material or relevant. Plaintiff proved defendant's testimony as to the question of custody of the policy after it came into defendant's possession following the change of beneficiary in 1936. The offered testimony included that testimony which was already before the court, and also the testimony on other matters. Mother Jensen's interest, if any, in the policy was not in issue, and by the terms of the policy it had vested in Mr. Jensen, the insured, upon her death. Defendant's claim of a gift from her husband subsequent to Mother Jensen's death is in nowise strength-

ened by evidence, otherwise admittedly incompetent, that she testified of a proffered and refused gift from Mother Jensen years before the events in question.

Defendant contends that Mr. Jensen, the insured, made a gift of this policy to her at the hospital following her designation as beneficiary, delivered absolute title to her, and surrendered all rights and interest in the policy to her.

To establish a gift inter vivos two elements are necessary—an unconditional delivery of the property on the part of the donor, coupled with the intention to relinquish all further dominion over the same by the donor, and to vest full and complete title in the donee. Andersen v. Luikart, 127 Neb. 256, 255 N. W. 18; Henley v. Live Stock National Bank, 127 Neb. 857, 257 N. W. 244; Smith v. Pacific Mutual Life Insurance Co., 130 Neb. 501, 265 N. W. 534; Hild v. Hild, 135 Neb. 896, 284 N. W. 730; Ralston v. Marget, 138 Neb. 358, 293 N. W. 124; First Trust Co. v. Hammond, 140 Neb. 330, 299 N. W. 496, on rehearing, 300 N. W. 808; In re Estate of Vanicek, 145 Neb. 531, 17 N. W. 2d 477.

Defendant does not claim ownership by virtue of any gift of this policy to her by Mother Jensen. The evidence of the daughter which was admitted shows that she refused to accept a gift of the policy at that time, even assuming the right of Mother Jensen to make a gift of it to her. Likewise, the policy provides that upon the death of the beneficiary the interest of the named beneficiary "shall vest in the Insured." So that whatever interest Mother Jensen had in this policy passed to Mr. Jensen upon the death of his mother in 1935. Defendant accepts that fact and by pleading and argument here contends that the gift was made to her by her husband in 1936 at the hospital.

We go to the question of what the insured's intentions were when he handed defendant the policy. To determine that we must inquire into what he was trying to accomplish. So far as the record shows, the relations of husband and wife were amicable; they had no pressing financial problems; they were not making a division or disposition of

their property. The picture is that the husband was seriously ill; he had a policy of insurance on his life that was without a designated beneficiary; he wanted his wife to be the beneficiary so as to receive the amount payable upon his death; he had his wife named as the designated beneficiary of the policy. Clearly, that was what he intended to do and that was what he did and no more. He did not surrender the right of revocation of a beneficiary which was reserved in the policy. He made the benefits of the policy immediately available to his wife in the event of his death. When Mr. Jensen said to defendant, "take this; you will probably need it," he obviously had that need in mind. There is nothing here to indicate that he intended to do more. By handing the policy, with the beneficiary so designated, to his wife, the insured did no more than place it in her hands for safekeeping, and where it would be available to her if and when he died. Defendant's testimony in the divorce action as to the disposition of the policy sustains that conclusion. He did not place the title of the policy in his wife; hence, the presumption of a gift from husband to wife does not arise. See First Trust Co. v. Hammond, *supra;* Hoover v. Haller, 146 Neb. 697, 21 N. W. 2d 450.

We reach the same conclusion as did the trial court, i. e., the insured did not make a gift of the policy to defendant.

We come now to defendant's contention that there was no valid and legal change of beneficiary by insured from Grace Jensen, defendant, to Lyda B. Marley, plaintiff.

The policy provision regarding a change of beneficiary, so far as applicable here, is: "When the right of revocation has been reserved, * * * the Insured, * * * may, while the Policy is in force, designate a new beneficiary * * * by filing written notice thereof at the Home Office of the Company, accompanied by the Policy for suitable endorsement thereon. Such change shall take effect upon the endorsement of the same on the Policy by the Company."

The statutory provision is: "Any person holding a policy in any such company may, without the consent of the bene-

ficiary, unless the appointment of such beneficiary be ir-
revocable, either * * * or, with the consent of the company,
he may change his beneficiary." § 44-370, R. S. 1943.

What was done here? The insured by letter dated Decem-
ber 17, 1943, advised the insurer that he was unable to ob-
tain possession of the policy, stating why; that he wanted
the beneficiary changed from Grace Jensen to Lyda B.
Marley, requested that the change be made and revoked
the designation of Grace Jensen as beneficiary. The insurer
by letter dated January 5, 1944, refused to recognize a
change of beneficiary until the policy had been returned
to it "for endorsement in accordance with its terms," and
advised that it was placing the "request for a change of
beneficiary" on file. Thereafter, the insured undertook to
secure possession of the policy from the defendant, Grace
Jensen, and she refused to surrender the policy. The in-
sured died without the policy having been delivered to the
company for endorsement of change of beneficiary. There-
after, an action at law was brought on the policy. The in-
surer refused to decide which of the claimants was entitled
to the proceeds, and filed its petition of interpleader. Grace
Jensen was brought into the litigation and the insurer paid
the proceeds into court. The action then proceeded as one
in equity to determine which of the two claimants was en-
titled to the proceeds.

Defendant relies primarily upon the case of Urick v.
Western Travelers Accident Association, 81 Neb. 327, 116
N. W. 48, denying recovery where a change of beneficiary
had not been completed. The authority of this case is put in
question in Adams v. Police & Firemen's Insurance Associa-
tion, 103 Neb. 552, 172 N. W. 755. But, passing that, it is
obvious that the Urick case does not sustain the defendant,
but in fact supports the plaintiff and the decree of the trial
court.

The Urick case was an action at law. The instant case
is now one in equity. In the Urick case the insured was
asked to send his policy to the insurer for endorsement.

Insured had the policy in his possession; he could have sent the policy to the company, but did not do so. Here the insured did not have possession of the policy and could not send it to the insurer. In the Urick case we said: "Relative to the changing of beneficiaries under an insurance contract there are decisions holding that when the assured has done all that he is required to do, and all that is in his power, or when, through ignorance or mistake, he fails to do all that he could have done to substitute a new beneficiary, equity will declare the change complete. We find no fault with these decisions. However, they do not state the general rule, but exceptions thereto. The evidence in this case will not permit the application of any exception to the general rule."

In Adams v. Police and Firemen's Insurance Association, *supra,* we cited with approval and followed Supreme Conclave, Royal Adelphia, v. Cappella, 41 F. 1, and summarized the principles announced in that opinion as follows: " * * * Mr. Justice Brown says the general rule that the insured is bound to make such change of beneficiary in the manner pointed out by the policy and by-laws of the association is subject to three exceptions: '(1) If the society has waived a strict compliance with its own rules, and, in pursuance of a request of the insured to change his beneficiary, has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued. * * * (2) If it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made. * * * (3) If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but, before the new certificate is actually issued, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued.' "

In Goodrich v. Grand Lodge, B. of R. T., 107 Neb. 250, 185 N. W. 404, we cited with approval the rule that " 'Equity

does not demand impossible things, and will consider as done that which should have been done, and, when a member has complied with all the requirements of the rules for the purpose of making a substitution of beneficiaries within his power, he has done all that a court of equity demands.' 14 R. C. L. 1392, sec. 556." See, also, Goodrich v. Equitable Life Assurance Society, 111 Neb. 616, 197 N. W. 380, in which we said: "The question in each particular case, therefore, is ordinarily whether the acts required on the part of the company are essential parts of the contract, or mere ministerial and formal details." See, also, La Borde v. Farmers State Bank, 116 Neb. 33, 215 N. W. 559.

In Smith v. Pacific Mutual Life Insurance Co., *supra,* we said: "The provisions of a life insurance contract providing for the manner in which an assignment thereof, or change of beneficiary, is to be made is incorporated therein for the benefit of the insurer; if the insurer waives compliance with such provisions, the failure to comply therewith cannot be raised by third persons."

The texts state the rule as follows: "On the principle that equity regards as done that which ought to be done, the courts will give effect to the intention of insured by holding that the change of beneficiary has been accomplished where he has done all that he could to comply with the provisions of the policy, as where he sent a proper written notice or request to the home office of the company but was unable to send the policy by reason of circumstances beyond his control, as where it had been lost, or was in the possession of another person who refused to surrender it or was otherwise inaccessible, * * * ." 46 C. J. S., Insurance, § 1175, p. 79. "It is uniformly held that where the insured's failure to complete a change of beneficiary in his policy, before his death, by a return of the policy to the insurer, was caused by a refusal of the beneficiary named therein to surrender the policy to him, his efforts, if otherwise in substantial compliance with the requirements imposed by statute or contract, will—at least, as between the persons claiming

as beneficiaries—be given effect, and the equitable right of the person designated by him as the new beneficiary will prevail over the strict legal title appearing on the face of the policy." 29 Am. Jur., Insurance, § 1317, P. 987. See Annotation, 36 A. L. R. 771. The cited cases are numerous and amply sustain the texts on the proposition here involved.

It is clear here that the insured did everything he could reasonably do to secure a change of beneficiary. The insurance company objected to making the change only because the policy was not submitted to it for endorsement of the change of beneficiary. It treated the letter of December 17, 1943, as a request for change of beneficiary. Such an endorsement would be only a ministerial act. The defendant by wrongfully retaining possession of the policy prevented the insured presenting the policy for the endorsement, and thereby prevented the endorsing of a change of beneficiary thereon. Equity will not permit her to profit as a result of her wrongful act.

The decree of the district court is affirmed.

AFFIRMED.