**FIDELITY MUT. LIFE INS. CO. v. CITY NAT. BANK OF FAIRMONT et al.**

Civ. No. 221–F.

United States District Court
N. D. West Virginia, Fairmont Division.

Dec. 30, 1950.

Russell L. Furbee and C. Howard Hardesty, Jr., of Fairmont, W. Va., for plaintiff, Fidelity Mut. Life Ins. Co.

Amos & Amos and Robert W. Lowe, all of Fairmont, W. Va., for defendant, City Nat. Bank of Fairmont.

Tusca Morris, of Fairmont, W. Va., for defendant, Marjorie H. Ave Lallemant.

Jack Manley, of Fairmont, W. Va., for defendant, Donald P. Ave Lallemant.

WATKINS, District Judge.

This is an interpleader action in which the plaintiff insurance company asks the court to determine which of two claimants, City National Bank of Fairmont or Marjorie H. Ave Lallemant, (now Marjorie H. O'Flynn) is entitled to the cash surrender value of an insurance policy carried by plaintiff on the life of defendant, Donald P. Ave Lallemant. The insurance company has paid the sum of $5,822.83 into court and has been dismissed as a party to this action. The case was tried by the court without a jury. There is very little dispute as to the facts.

Previous to October 25, 1948, defendant Donald P. Lallemant and Marjorie H. Lallemant, then husband and wife, agreed that their marital differences were irreconcilable, and decided to enter into a separation agreement, and for a division of their property. The terms of the agreement were worked out by the parties and their attorneys by correspondence. They agreed to meet in Washington, D. C., at the law office of Kenneth Davis, attorney for the husband, on October 26, 1948, to execute the agreement which was to be prepared by William Hughes Lewis, attorney for the wife. Davis promised to have certain life insurance policies of the husband, referred to in the agreement, present at the meeting, since these policies were to be assigned to the wife, and Lewis agreed to bring to Washington with him a deed to certain Maryland property, the agreement providing that the wife was to transfer her one-half interest in this property to her husband.

They met as agreed on October 26, and executed the separation agreement, which was dated October 25. By the terms of that agreement the husband agreed to pay the wife certain monthly sums of money for her maintenance and support and for the maintenance, support and education of their only child, John D. Lallemant. The wife transferred to the husband simultaneously with the execution of the agreement her one-half interest in the Maryland property. By the terms of the agreement the husband agreed to pay the wife the sum of $68,000 in equal installments of $500 per month commencing November 25, 1948. The agreement, duly executed and acknowledged by both parties and witnessed by their respective attorneys, provided: "As collateral security to insure the payment of the said balance of $68,000, the Husband has delivered to the Wife simultaneously with the execution of this agreement two insurance policies, one with a face value of $49,000, issued by Fidelity Mutual Life Insurance Company of Philadelphia, Pa. and the other in the face amount of $25,-

000 issued by the Atlantic Life Insurance Company of Richmond, Va., together with assignments thereof to the Wife. The Husband agrees to keep the said policies in full force and effect and to pay the premiums accruing thereon as they become due."

At the time of the execution and delivery of the separation agreement, the husband also executed, acknowledged and delivered a formal assignment of the Fidelity Mutual Life Insurance policy to his wife, the assignment being on a form furnished by the insurance company. Besides the execution of the separation agreement providing for the assignment of the $49,000 Fidelity Mutual policy, and the formal assignment thereof, the husband executed and delivered to the wife 136 monthly notes of $500 each, with an acceleration clause therein, evidencing the monthly payments to be made by him to his wife under the terms of the separation agreement.

The husband was unable to deliver manually to his wife the Fidelity Mutual policy and gave as an excuse for not so doing that the policy was inadvertently left in a vault in some bank in West Virginia. The separation agreement expressly provided that the policy was then and there delivered to the wife. Counsel for the husband had promised to have all necessary papers present, and the agreement had been drafted with that in mind. The husband then and there agreed to deliver the policy to his wife within the next few days, not to exceed ten days. Such promise was not accepted without a writing therefor, counsel for the husband writing a letter to counsel for the wife, dated October 26, 1948, and promising that the policy would be mailed to counsel for the wife as soon as conveniently possible, but not later than ten days from date. After this written promise was made, the execution and delivery of the separation agreement, the formal assignment of the policy, and the execution of the notes, were completed. Not having the original policy at hand, it was not possible to insert the exact number of the Fidelity Mutual policy being assigned, in either the assignment provisions of the separation agreement or the formal assignment on form provided by the insurance company.

The next day, October 27, the wife, acting through her attorneys, William Hughes Lewis and Irving D. Lipkowitz, notified the insurance company by letter that there had been an assignment of its policy to Marjorie H. Lallemant by Donald P. Lallemant, the insured, by the separation agreement and also by formal assignment. The letter stated:

"October 27, 1948.

"Dear Sirs:

"I am the attorney for Mrs. Marjorie H. Lallemant, of New York, New York, who is the wife of your insured, Donald P. Lallemant.

"Yesterday the parties entered into a written separation agreement under the terms of which, among other things, your insured, Mr. Lallemant, agreed to pay in instalments the sum of $68,000., to my said client. The said agreement also provides in part as follows:

" 'As collateral security to insure the payment of the said balance of $68,000., the Husband has delivered to the Wife simultaneously with the execution of this agreement, two insurance policies, one with a face value of $49,000., issued by the Fidelity Mutual Life Insurance Company of Philadelphia, Pa., and the other in the face amount of $25,000. issued by Atlantic Life Insurance Company, of Richmond, Va., together with assignments thereof to the Wife. The Husband agrees to keep the said policies in full force and effect and to pay the premiums accruing thereon as they become due.'

"I have in my possession your form of collateral assignment executed by your insured, Donald P. Lallemant. I shall send to you within the next few days, by registered mail, the said policy and the said collateral assignment, so that you make make whatever changes may be necessary in your records.

"This letter is being sent to you to give you notice of the foregoing facts.

"If there is anything which you desire to communicate to me before I send the

said policy and collateral assignment to you, please advise me.

"Very truly yours,
"Irving D. Lipkowitz,
"By: William Hughes Lewis."

On November 9, the insurance company answered this letter, fixing the number of the policy as 657697, the amount of the policy as $48,000 instead of $49,000, and acknowledged that it had received notice of the assignment by the letter of October 27. The first paragraph of the letter stated: "We have your letter of October 27 stating you are attorney for Mrs. Marjorie H. Lallemant, the wife of the insured under the above-numbered policy, and that the insured and his wife had agreed that the insured would assign a policy in our Company with a face amount of $49,000 to his wife. You did not mention any policy number, so there was a delay in matching up your letter with the proper policy file. I presume the policy numbered above is the one you have in mind, though it has a face amount of $48,000 and not $49,000."

The letter then suggested that it was customary in matters of this kind, also, to have the beneficiary changed to the assignee, in this case the wife, and enclosed a change of beneficiary form in duplicate to be used for that purpose. The forms enclosed described the policy as Policy number 657697. The letter then stated: "If used, both copies should be signed by the insured in the presence of a disinterested witness and dated prior to the date of the assignment, which I understand has already been executed and is in your possession.

"I presume the assignment was executed in duplicate, and both copies should be sent to this office for record. The duplicate copy, properly endorsed, will then be returned to you. If the beneficiary is changed as suggested to the wife of the insured, the assignment need be executed only by the insured.

"Very truly yours,
"Vincent P. Keesey,
"Assistant Counsel."

Upon receipt of this letter, Lewis, counsel for the wife, told Keesey by telephone that he disagreed with the suggestion relating to change of beneficiary; that he did not deem a change of beneficiary necessary as a matter of insurance law; that Lallemant was the owner of the policy and there was no reason why the paper in his possession was not sufficient to convey whatever interest he had. Keesey replied that the company felt it was its privilege to do it this way, and Lewis told him he would see what he could do to comply with the request. Thereafter Lewis attempted to communicate with Lallemant and his attorney to get a duplicate of the assignment, but without success. The policy was not delivered within the ten-day period as promised. Thereafter counsel for the wife made repeated efforts by correspondence, telephone and personal contact, to secure delivery of the policy, and each time received further promise or assurance that it would be delivered.

On January 17, 1949, Keesey again wrote to counsel for the wife referring to his letter of November 9 relating to change of beneficiary. That letter stated: "We have had no further word from you about the matter. I presume you are aware of the policy provisions that the company will not be charged with notice of any assignment until the assignment in duplicate has been filed at this office for record. I would suggest that you urge the parties to request change of beneficiary as suggested, and see that both copies of the assignment are sent here for record. After that is done, we will return the duplicate copy of the assignment, properly endorsed, to show it has been recorded."

Upon receipt of that letter Lewis telephoned Keesey and told him that they would try to comply with whatever the company wanted, but felt that it was not required; that the policy had been assigned and that was all that was legally required; and on February 16, 1949, wrote Keesey that every effort was being made to comply with his request and that he hoped to have the matter completed soon. Efforts to secure the original policy or to get a dupli-

cate of the assignment or to secure any cooperation from Lallemant or his attorney completely failed. In the meantime Lewis did not forward the separation agreement or the assignment. Lewis had told the insurance company that when he received the original insurance policy he would send it and the assignment papers together. As he received assurance from time to time that the policy would soon be delivered to him, he did not forward the policy, believing that Lallemant had divested himself of all his interest in the policy by reason of the agreement, collateral assignment, and notice given to the debtor insurance company of such assignment, and believing that thereafter he had no power to transfer such policy to someone else.

John C. Hupp was the general agent of plaintiff Fidelity Mutual Insurance Company. He had sold Lallemant the insurance policy in question, in the amount of $48,000, and also sold him another policy in the amount of $250,000, which latter policy had been previously assigned to Reconstruction Finance Corporation on September 3, 1948. On March 3, 1949, Lallemant was in financial difficulties and went to Hupp who had sold him these large policies for assistance. Hupp inquired of Edwin C. Griswold, vice president of defendant, City National Bank of Fairmont, whether Lallemant could obtain a loan of $5,000 on the $48,000 insurance policy in question, which then had a cash surrender value of more than $5,000 and secured an appointment for the next day. Hupp then telephoned Keesey, assistant general counsel of the insurance company in Philadelphia, to inquire whether there was any assignment on file or record against this policy. Keesey promised to reply by telegram. Keesey is the same person with whom Lewis, counsel for the wife, had communicated by correspondence and telephone concerning the previous assignment of the same policy to the wife. He is the same person who had written on November 9, 1948 to counsel for the wife, acknowledging receipt of notice of the assignment of this same policy to the wife, under date of October 27, 1948, in which letter Keesey stated that he "understands"

that such assignment to the wife "has already been executed and is in your possession." The notice of assignment had been sent to this same home office of the insurance company in Philadelphia and was, no doubt, then in the appropriate file of the insurance company at Philadelphia. Despite this situation and the somewhat recent correspondence and telephone calls concerning the assignment of this same policy, Keesey wired Hupp on the afternoon of March 3, as follows: "No assignment of policy 657697 Ave Lallemant on file here."

Keesey did not testify, and no reason is given as to why he eliminated from his telegram any information concerning the notice of assignment to the wife then on file at the insurance office.

Hupp also knew about the previous assignment to the wife, because Keesey had sent him a copy of his letter of November 9, 1948, in which Keesey stated that he understood that Lallemant had already executed and delivered an assignment to his wife of this same policy. Hupp stated that he received this letter as well as copies of any other letters written by Keesey to counsel for Marjorie Lallemant, it being the practice of the home office in Philadelphia to send to their general agent in Fairmont a copy of any correspondence relating to assignments of policies written by that agent, it being a part of his duties as such agent to assist policy holders in matters of assignments. In his telephone conversation with Keesey neither of them mentioned the previous assignment.

The following morning, March 4, Hupp introduced Lallemant to Griswold and to Carl Springer, cashier of the bank. Lallemant produced the original insurance policy. Griswold asked if the policy was free and clear of encumbrances, and Lallemant answered in the affirmative. Griswold then turned to Hupp and asked him what he knew about it, and asked Hupp as agent of the insurance company as to existence of any assignment against the policy. Hupp replied by saying that he had a telegram from the insurance company "to the effect that it was clear". The telegram was not produced until the day

after the loan was made by the bank. Hupp did not mention to the bank officials anything about the previous assignment to the wife as shown on correspondence on file in his office. He said that there was no doubt in his mind that the policy referred to in Keesey's letter of November 9 was the $48,000 policy then being offered to the bank as collateral, and that there had been a mistake of $1,000 in the stated principal amount of the policy. He said that he had not forgotten about the contents of that letter but considered the information therein "irrelevent"; that he assumed Lallemant was correct when telling him that nothing ever came out of "negotiations" with his wife; that even though the insurance company had notice by letter that an assignment had been executed and delivered for this particular policy, that since such previous assignment was not on record in the insurance company office, he believed that any such assignment would be no good.

Lallemant executed a note dated March 4, 1949, and made a formal assignment on the insurance company form, assigning the policy to the bank to secure a loan of $5,-000. On or about March 1, 1949, he had changed the beneficiary in this policy from his wife and son to his estate. Hupp transmitted the assignment to the insurance company, where it was filed on March 15. On March 8 the insurance company wrote counsel for the wife that it had just received assignment of the policy to the bank dated March 4. On March 10 counsel for the wife sent her assignment, dated October 26, to the insurance company. Lallemant defaulted in the payment of the note. He also defaulted in the payment of the notes given to his wife. On January 25, 1950, the wife obtained a decree of divorce from Lallemant, in which the separation agreement was made a part thereof and a judgment was rendered in this decree in favor of the wife against the husband for $62,323, the balance due on the notes. She has since remarried and her name is now Marjorie H. O'Flynn. The insurance company has refused to pay either claimant.

The policy contains the following provision: "No assignment shall be binding upon the Company until the original or a duplicate thereof is filed at its head office. The Company assumes no obligation as to the effect, sufficiency or validity of any assignment."

There is no provision in the policy relating to how notice of assignments shall be given to the insurance company.

The bank takes the position that the wife at no time has ever had an assignment of this policy, legal or equitable, first, because she never had possession of the policy, and, second, because the policy was not sufficiently identified in the papers relied upon to create the assignment. The bank also contends that if there was an assignment to the wife, no notice thereof was given to the debtor insurance company, and an equitable estoppel against her claim was created. I am unable to agree with either contention.

The separation agreement, the collateral assignment, and the two letters exchanged between attorneys (letter from Lewis to the insurance company giving notice of assignment, dated October 27, and letter from Keesey replying thereto, dated November 9) when considered in the light of existing facts and surrounding circumstances, plainly show that it was the intention of Lallemant to make, and his wife to receive, an assignment of all of his interest in this $48,000 insurance policy bearing number 657697. It is also clear that the insurance company believed and intended the notice of assignment to apply to this particular policy. Keesey and Hupp both promptly identified the policy from the information set forth in the correspondence. Indeed, the assignment papers and notice of assignment could hardly have referred to any other policy. The only other policy carried by the company on Lallemant was a much larger policy in the amount of $250,000, and this policy had already been assigned to another. The separation agreement provided for assignment of a $49,000 policy, whereas the correct amount of the policy was $48,000. Its identity could not be questioned.

Any language, however informal, if it shows the intention of the owner of

the chose in action to at once transfer it, so that it will be the property of the transferee, will be sufficient to vest the title in the assignee. No particular form is necessary. While the chose in action must be identified, no greater particularity is required than is actually necessary to do this, with the aid of the attendant and surrounding circumstances. 6 C.J.S., Assignments, § 44, at page 1092. Delivery of the insurance policy is not necessary if the assignment is proved by other satisfactory evidence. 5 C.J. § 68, page 903; 6 C.J.S., Assignments, § 48. Here the separation agreement and the formal assignment on the form prescribed by the insurance company, with notice to the debtor created an equitable assignment in Policy No. 657697. The contention that there was no notice of assignment to the insurance company is so obviously without merit, that no discussion would seem necessary.

There is no merit in the assertion that Lewis, attorney for the wife, in any manner contributed to the deception and fraud of Lallemant, or that he did anything to justify equitable estoppel against her claim.

The provision in the policy to the effect that no assignment shall be binding upon the insurance company until the original or a duplicate thereof is filed at the head office, can afford little comfort to the bank. This provision is solely for the benefit of the insurer and was waived when the insurance company interpleaded the two rival claimants and paid the fund into court. If the insurer waives compliance with such provision, the failure to comply therewith cannot be raised by third persons. Rothstone v. Norton, 231 App.Div. 59, 246 N. Y.S. 354; Marley v. New York Life Ins. Co., 147 Neb. 646, 24 N.W.2d 652. Such provision does not prevent an assignment valid in equity. Seattle Ass'n of Credit Men v. Bank of California, 177 Wash. 130, 30 P.2d 972. In fact, the bank does not even contend that the wife could not have had an equitable assignment without filing the assignment pursuant to that provision. It says that since Lallemant held control of the policy it was absolutely necessary to file the assignment with the in-surance company, and that notice to the insurance company of the assignment was not sufficient.

There are two views with reference to the effect of notice to the obligor as affecting priority between two successive assignees of the same chose in action. The majority rule is stated as follows: "The question which of the assignees of a chose in action by express assignments from the same person,— the one whose assignment is prior in time, or the one who first gives notice to the debtor,—has the prior right, is one in respect to which there is much conflict of authority. In most jurisdictions the assignee first giving notice of his claim to the debtor is preferred, unless he takes a later assignment with notice of a previous one or without a valuable consideration." 31 A.L.R. page 876.

The minority rule which has a large following is that among successive assignees, the one prior in point of time should prevail, irrespective of notice. This is the rule in West Virginia. Tingle v. Fisher, 20 W. Va. 497. Since the wife gave notice of her assignment, she has the prior right under any of these rules.

The majority rule has been rejected by the Supreme Court. Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867. The majority rule has also been rejected by A.L.I. Restatement of Contracts, § 173, as pointed out by Judge Chesnut in Re Seim Const. Co., D.C. Md. 1941, 37 F.Supp. 855, 858. The Restatement adopts the minority rule with certain qualifications. West Virginia has never given approval to qualifications adopted by the American Law Institute. As pointed out in the Annotation to the Restatement of Contracts, the rule in West Virginia is as follows: "There being no legal title in the assignee of a chose in action, and the equities being equal, the prior assignee prevails over the subsequent assignee, regardless of notice to the debtor. Tingle v. Fisher, 20 W. Va. 497 (1882); Turk v. Skiles, 45 W. Va. 82, 30 S.E. 234 (1898); Kenneweg v. Schilansky, 45 W. Va. 521, 31 S.E. 949 (1898) dictum; Note (1930) 36 W. Va. L.Q. 368."

The question of priority of successive assignments must be determined by local law. "And as the status of the assignment is fixed by local law, this is true without regard to Eric R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Benedict v. Ratner, 268 U. S. 353, 45 S.Ct. 566, 69 L.Ed. 991; Union Trust Co. v. Townshend, 4 Cir., 101 F.2d 903, certiorari denied 307 U. S. 646, 59 S. Ct. 1044, 83 L.Ed. 1526." In Re Seim Const. Co., supra.

Regardless of which rule is applied, the assignee who is not only first in point of time in securing his assignment, but is also first to give notice to the debtor, is, of course, entitled to priority. 6 C.J.S., Assignments, § 91, page 1146. "Clearly the first assignee has the prior right in a chose in action where he is also the first to give notice to the debtor." 4 Am.Jur. page 313. Here the wife was the first assignee in point of time and first to give notice to the debtor.

When signing and delivering the separation agreement and the formal assignment, all title which Lallemant possessed then passed to his wife. He had a right to dispose of his policy as he directed without the assent of the debtor. Notice of the assignment to the debtor adds nothing to the right or title transferred. Salem Trust Company v. Manufacturers' Finance Co., supra. If the bank elects to rely on representations of Lallemant, and is deceived, it cannot shift its loss to the first assignee, the wife, unless some act or omission of the latter was proximate to the deception. A subsequent assignee, in the absence of facts which create an equitable estoppel against the first assignee, takes nothing by his assignment, for the simple reason that the assignor has nothing to assign. There is no ground for subordinating the claim of the first assignee on the ground of equitable estoppel unless her failure was an element in or contributed to the deception.

When the wife did not receive the manual delivery of the policy she proceeded to do other things to preserve her rights, and to protect the rights of any subsequent assignee. Within a few hours she notified the insurance company of her assignment. This was all that she could do to protect any subsequent assignee from fraud and deceit of her husband.

The notice also served to protect her own rights. She had reason to believe that any subsequent assignee would be required to inquire of the insurance company whether it had notice of any adverse assignments, and that if such inquiry was made that the insurance company would tell them the whole truth relating to her prior assignment. She was not required to do more. However, she did endeavor diligently to secure possession of the policy, without success. I have not been able to find any case of equitable estoppel where notice to the debtor has been given.

For the reason stated above, the wife, as first assignee, is now best in right, and has an equitable lien on the fund now in the Registry of the Court, and this fund should be decreed to her, less the costs of this proceeding.